Airlines. Your Honor, this case involves an alleged work injury of August 11, 2011, where the employee was injured while working for Southwest Airlines as a flight attendant. The petitioner testified she was mid-flight, actually towards the end of her flight, in her descent to New Orleans, collecting trash, walking down an aisle of an aircraft. When she testified, she allegedly tripped over a passenger's backpack. The petitioner testified she fell forward, caught herself on an armrest and some of the seats in front of her. The petitioner was then transported to an emergency room. Well, I think we're fairly familiar with the facts, but could you maybe go to the heart of the issue and tell us why you think the Commission's decision is wrong? Yes, Your Honor. We're here today to ask that this Court reverses the Commission's decision, which awarded benefits with respect to the petitioner's lumbar and right shoulder condition. Because its findings are against the manifest way of the evidence. Specifically, with respect to the lumbar injury, the Commission erred in finding that its causes are related to an August 11, 2011, work accident. In support of its finding, the Commission relied on the flawed opinions of the petitioner's treater, Dr. Gornett. Dr. Gornett testified that a part of his opinion was based on the fact that the petitioner suffered a twisting-type injury, and yet none of that mechanism of injury is not located anywhere in any of the contemporaneous medical records leading up to Dr. Gornett's first evaluation of the petitioner. In fact, it wasn't until the petitioner attained counsel when the petitioner suddenly had these complaints of a twisting-type mechanism of injury. In fact, when the petitioner was seen at the emergency department on the day of the accident, she testified that she simply twisted her ankle and injured her right knee with no description of a twisting injury or low back. Well, didn't all those symptoms come about later by her testimony? The low back symptoms, yes, Your Honor. Okay. Now, is this just really perhaps to summarize a battle between the doctors, your doctors versus Dr. Gornett? There are two doctors' opinions that have separate opinions, yes, Your Honor. However, the opinions of Dr. Gornett are against the manifesto of the evidence. Specifically, Dr. Gornett relied on inconsistent and incorrect histories provided by the petitioner with different mechanisms of injury expressed throughout the medical records and what she explained to Dr. Gornett at the time of her evaluation. Hang on a second. Gornett noted that the mechanics of the claimant's injury, the chronology of her complaints, and the positive findings on the MRI all indicated that the claimant's low back problems were attributable to the work accident, and he gave a causal connection. So why is that flawed? Because the history provided to Dr. Gornett is inconsistent with the medical records leading up to his evaluation, I believe it was November 2011. So the doctor can't parse out what's important and what isn't significant? He certainly can. However, the doctor should look at all the evidence presented to him in the fatality, and the fact that the mechanism of injury as described to him by the petitioner at the time of her accident is not supported by any of the other contemporaneous medical records leading up to his evaluation, I think it's certainly... Well, he could have made that conclusion, right? He could have said, well, you know, the way you're describing this and considering this doesn't seem to make any sense. He could have said that, right? He could have, yes, but he didn't in this case. Right. And in fact, Dr. Gornett even testified in his deposition that he was under the impression that the petitioner didn't even have any low back complaints where the record is filled with evidence of prior low back symptoms leading up to her date of accident. Well, there was no history that she took any time off work prior to the accident. That's correct. Okay, so doesn't that militate in favor that she didn't really have back problems before the accident? Well, she did have back problems that required her to lose time from work. That's correct, Your Honor. However, there's a plethora of medical evidence in the record that shows that, you know, she sought chiropractic treatment. She presented to her primary care doctor with complaints of low back pain prior to this injury for years leading up to this injury. And in fact, the petitioner testified that she didn't even begin to feel low back pain until she was exercising at home, which was several months later. There's also confusing testimony and medical evidence with respect to low back pain manifesting after a car accident. So I think the record is entirely unclear, given that the commission's decision is certainly against the manifesto of the evidence with respect to the low back condition. With respect to the right shoulder, there's also very little to no evidence to support a right shoulder injury as a result of an August 2011 work injury. In fact, the first mention of a right shoulder condition was not until January 26th of 2011, five and a half months later. The petitioner's testimony indicated that her right shoulder did not start until – her right shoulder complaints did not begin until November 7th, or sometime between November 7th and November 15th, 2011. She wasn't even able to pinpoint the exact date in which her right shoulder complaints began. Who's Dr. Solman? Dr. Solman was an expert retained by the petitioner to comment on the petitioner's right knee, right ankle, and right shoulder complaints. And did Dr. Solman support the claimant's position? He did, yes, Judge. Well, you said there was no evidence to support it. Wouldn't that be at least some evidence? It's minor evidence. However, as I said, when she testified at trial, she couldn't even pinpoint the exact date. She gave a nine-month period of time in which she could have fallen and injured her right shoulder. And in fact, the medical records don't even support the petitioner's testimony that she fell, injuring her right shoulder. She testified she was injured sometime between November 7th and November 15th. However, when she saw Dr. Bartish on November 7th, there was no complaints of right shoulder pain. She followed up with Dr. Gornett on November 29th. Only a complaint of ankle, knee, and low back pain. There was no shoulder pain mentioned whatsoever. She returned to Dr. Gornett a month later. Still no shoulder pain. First time she mentioned shoulder pain was in January 2011. So I think it's entirely speculative and requires a significant amount of conjecture in order to relate a right shoulder injury back to an August 2011 work accident. Let's talk about something that's probably going to be important to you, and that's the issue of penalties and fees under 19L and 19K. So what's your position on that? Your Honor, primarily I'd like to defer to the arguments outlined in my brief. However, I think the commission's decision with respect to penalties was likewise against the manifest rate of the evidence. Specifically, we had a good faith basis to deny treatment to the petitioner's shoulder. And that would have been what? Well, that would be the opinions of Dr. Phillips. Oh, really? Didn't you cut off TTD before those factors had a chance to examine the claimant? There was a period of a couple, I believe it was an eight-day period of missing TTD. However, subsequent to that, the petitioner was provided PPD advances several times. I think that's laid out in the record. So while there was a short period of PPD gap, the petitioner was made whole. Let me confront you with this statement, or this summary from the record. When the doctors, or IME doctors, Dr. Weber and Phillips, when TTD was cut off, they had not yet examined the claimant. When they did examine the claimant, neither doctor placed the claimant at MMI for all of her injuries, and both said that the claimant needed to undergo further treatment before she could be placed at MMI. And you say that gives you a legitimate basis to cut off TTD? Well, first, addressing Dr. Weber. Dr. Weber believes that the right knee and right ankle condition had resolved. The right knee condition wasn't really a right knee condition at all. Dr. Weber thought that the petitioner should have been evaluated by a spine doctor to evaluate. Maybe I missed something. Did any doctor place her at MMI? Maybe I missed something. I don't think those words were rationally said. However, given that the petitioner had no right knee problems, she was told to see a doctor to address lumbar conditions. She did that with Dr. Phillips, who said that it was actually a gluteal strain. I apologize if I didn't pronounce that correctly. And he actually recommended a few more weeks of physical therapy. Which the petitioner apparently never underwent. So even though the doctor did recommend that she have additional treatment, she never chose to follow up with that treatment. Instead, she sought the treatment, the recommendations of her own doctor. But you would have to acknowledge in sum that TTD was cut off before your doctors even examined her, right? Yes, Your Honor. But since then, the petitioner was provided, as I mentioned, PPD advances making her whole. In fact, paying her more periods of TTD than she would have been due. That was actually continued on. And I think that's located in the record in the petitioner's testimony. So for these reasons, Your Honors, anything that I haven't addressed, I respectfully defer to the arguments listed in our outline in our brief. And we'd ask that you reverse the Commission's decision in its entirety as it is against the manifest weight of the evidence. Thank you. Very good. Thank you, Counsel. Counsel, you may respond. Good morning. May it please the Court, Counsel. I'm Richard Salme. I'm here on behalf of Kelly Margrave. All of the issues raised by Impler in this case are assessed under the manifest weight standard. Specifically, as to accident and causation, Impler acknowledges that an accident did occur on August 7, 2011, when an employee tripped over a strap in the aisle, causing her to fall forward and injure herself. So there's no dispute that there was an accident of August 7. There's no dispute that it caused an injury to the knee and the right ankle. Impler cuts to the heart of their argument that they dispute a compensable accident to the low back. I believe the record is clear that there's sufficient evidence of record for the Commission to have found causal connection between the back condition and the work accident. It's up to the Commission to weigh the evidence. It's up to the Commission to make credibility determinations. And I believe the record contains sufficient evidence for them to have found the treating doctor, Dr. Coronet, more credible than respondents examining physicians. In particular, the Commission found the employee to be credible. She talked about having increasing back pain in the weeks following her work accident. There was no dispute that she was working full-time prior to the, in the months leading up to her work accident. And the history of no similar history of back, similar back problems was confirmed by chiropractor Dr. Daniel Roach, who testified that he had treated her for some minor back problems in the past. But this was something distinctly new and different, radiating symptoms down the leg. And it required him to refer her to an orthopedist, something he'd never had to do before. The Commission found Dr. Coronet to be credible. Dr. Coronet explained that her symptoms came about from an evolving inflammatory process. He identified a large lumbar herniation. He explained the mechanism of injury, the development of symptoms, physical exam findings, and radiology testing all support that this, that she sustained this lumbar herniation as a result of this work injury. Additionally, the Commission is free to give little weight to the opinion of Dr. Weber regarding the back. In particular, she, even though she testified that she does back evaluations, in this case she was not, never authorized to do so. So even where she did give a comment that I don't think the back is related, she acknowledged she didn't do any type of evaluation for the back. She wasn't asked to do that. Additionally, the Commission is free to give little weight to the opinion of Dr. Phillips. He seems to identify a back injury, but he calls it a hip gluteal strain. And I think the arbitrator got it right where he said, well, it looks like Dr. Phillips is identifying that she had a back injury, he's just characterizing it differently than what Dr. Coronet was characterizing it as. I think there's sufficient evidence in the record for the Commission to have found causal connection on that issue. As to the issue regarding a right shoulder injury, again, as long as a medical condition flows from, as a natural consequence from the work accident, there's sufficient evidence of record for the Commission to have found a causal connection here. In particular, an employee testified that she fell as a consequence of her right knee giving way. Now, we look to the record and we say, well, what support is there for that to have been the case? Well, first she testified that she had ongoing problems with the right knee from the time of the work accident. Dr. Weber, when she evaluated an employee, she acknowledged complaints of a giving way sensation of the knee. Dr. Solman also noted this giving way sensation, and he confirmed that that's not uncommon when someone has a patellar injury, as was suffered by an employee in this case. Dr. Solman concluded because the knee was weak, and as an employee testified, when she came out of the knee and ankle brace, that she fell because her knee gave way. I think that's sufficient both medically and factually for the Commission to have concluded that that fall injury was consistent with and as a result of the work injury. As to the reasonableness and necessity of medical treatment, there's really no testimony or other evidence to the contrary of Dr. Burnett and Dr. Solman that the treatment rendered had been reasonable and necessary. As to future medical treatment, really the same arguments apply. The Commission could find the opinion of Dr. Burnett when it comes to treatment of the back. Specifically, he identified a large herniation. He explained the mechanism and how the symptoms from that herniation evolved over time, and the need for treatment for that herniation are all appropriate as it flowed from the work incident. Additionally, they could find that Dr. Solman's opinion regarding additional treatment for the knee and the shoulder is also appropriate. He testified regarding his understanding of how these symptoms evolved, the weakness in the knee that resulted in the fall and injury to the shoulder, and that she needed additional workup and treatment for that. As to TTD, the Commission properly found that TTD benefits should be awarded from August 7, 2011 through the date of the trial, February 8, 2013. I find no evidence of record, and I believe that the Commission also found that none of the physicians placed an employee at MMI, including specific findings that neither of employers examining physicians, Dr. Phillips or Weber, ever placed her at MMI. So TTD was appropriate. That segues into the issue. You filed a cross appeal. I did, Your Honor. The Commission upheld the arbitrator's award of penalties under 19L, but you filed a cross appeal seeking to reverse the Commission for vacating the award of penalties under 19K and attorney's fees under Section 16. Why should we reverse the Commission? I think the basis of the Commission's determination is flawed. They made a factual finding that I believe is just completely unsupported by the record. They said that Dr. Phillips diagnosed a gluteal sprain strain but did not relate that to the work accident. I believe both his report clearly relates the gluteal sprain strain and his deposition testimony clearly relates the gluteal sprain strain. So even if, as the Commission seemed to suggest, that the employer may have had a basis to dispute treatment for the lumbar injury, the surgery that was being recommended by Dr. Hornett, the fact that Dr. Phillips identifies an injury, he identifies need for restrictions, and he identifies that she's not at maximum medical improvement, gives them no basis to have terminated the TTD benefits. We look back to the arbitrator's award of those penalties, and that's exactly what he was looking at. He wasn't looking at a denial of the medical treatment that employer claims. He was specifically looking at the denial of the TTD benefits up to the date of trial. So his calculation was based on they had no basis to have denied the TTD benefits. Additionally, the Commission cited to Dr. Weber's opinion, and they said that Dr. Weber found the petitioner's lumbar condition was not causally related to the August 7, 2011 work accident. Even if we accept that that opinion has any credibility, and I would say that it really doesn't have much basis in the record since Dr. Weber acknowledged she never even evaluated the back. But even if we accept that statement as true, Dr. Weber, in her deposition, confirmed she never placed employee at maximum medical improvement. Neither one of them did, correct? That's absolutely correct, and that's the basis of my argument. Did the employer, in fact, cut off the TTD before these doctors even examined the claimant? That is also true. It was done prior to that being the case. What about his response that later actions were curative of that, that they made her whole and more so or whatever? I guess I don't follow that argument where if they say that there was some advance against PPD, I would say first, even with the credit against advances that they did provide, and they were provided solely for the purpose of delaying the trial so that they could get the depositions of their examining doctors, even if that's the case, it still did not make her whole. We still see a significant unpaid award of TTD benefits up through the date of the trial. So even if we say, okay, they advanced, and I believe there was a credit for approximately $10,000, there's still an unpaid TTD balance in the neighborhood of about $40,000. So I don't think that makes her whole, and I think just the delays in this case justify that. That's why I'm asking for the decision of the arbitrator to be reinstated in its entirety. Okay, very good. Thank you, counsel. Counsel, you may respond or reply. Your Honors, I have nothing to add. I'll reply. Okay, very good. Well, thank you, counsel, both for your arguments in this matter. We'll be taking your advisement, and a written disposition shall issue.